(C. D. 424)

GELLMAN BROTHERS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 23, 1941)

*G. W. R. Wallace, Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Minneapolis, Minn., brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as tin bell rattles No. 2757 and as tin rattles No. 2787. Duty was levied thereon at the rate of 50 per centum ad valorem under paragraph 364 of the Tariff Act of 1930 as bells. It is claimed that said articles are properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for.

At the hearing, held at Minneapolis on February 21, 1940, it was conceded by counsel for the Government that said merchandise was "composed in chief value of metal, not platinum, gold or silver, and not plated with platinum, gold or silver, or colored with gold lacquer."

A sample of said merchandise was admitted in evidence as exhibit 1. The plaintiffs also offered in evidence the testimony of Nate Gellman, a partner in Gellman Brothers, the plaintiffs herein. He testified that he was familiar with the manner in which exhibit 1 is used, for the reason that his firm advertised and sold it for a specific purpose, namely, for use as a noisemaker at various celebrations, such as

dances, night clubs, etc.; that he has actually seen it so used at the New Year's eve celebration at the Masonic Lodge Hall in Lake Minnetonka; that he sold the said merchandise as a bell rattle, as shown by page 309 of his firm's catalog, which was admitted in evidence as exhibit 2, over objections interposed by counsel for the Government; that a bell is some form of metal shape, with a piece of metal inside, so that when it is struck it has a ringing tone, and that in his opinion exhibit 1 does not have such a ringing tone.

On cross-examination the witness testified in part as follows:

By Mr. WELSH.

X Q. Mr. Gellman, how do you ring a bell?—A. You get hold of it by the handle and ring it; just like that (demonstrating).

X Q. Just like you are ringing exhibit 1 now? It works in the same way?

Mr. SCHWARTZ. I object to the word "ringing." I don't think it rings at all.

A. It works in the same way.

By Mr. WELSH.

\*          \*        ˮ          \*           \*           \*           \*          \*

X Q. You hold it exactly as you would hold a bell?—A: Yes, sir.

X Q. And you ring it exactly as you would ring a bell?—A. You mean you make the same motion.

X Q. It makes a sound similar to a bell?—A. It makes a sound. I wouldn't say that it is similar to a bell. In my opinion a bell has a ringing tone. This is more or less a noisemaking tone.

X Q. Doesn't it depend on the composition of the metal as to what kind of tone it has?—A. Yes, sir.

On redirect examination the witness testified in part as follows:

By Mr. SCHWARTZ.

Q. Mr. Gellman, this catalogue, page 309, says that this bell rattle produced a loud, ringing noise. Do you think that is exaggerated?

Mr. WELSH. That is objected to, if the court please. That is his own catalogue and his own description.

A. I don't write the copies of that catalogue. My advertising man does that. Do you want me to answer?

Mr. SCHWARTZ. Yes.

Judge DALLINGER. Objection overruled.

A. Frankly, I think it is an exaggeration when it says a "ringing noise." It makes a loud noise, but I don't see anything ringing about it.

Upon this record counsel for the plaintiffs apparently rests his contention that exhibit 1, representing the merchandise at bar, is not a bell within the common meaning of the word on the theory that it does not produce, when rung, a ringing musical sound. With such contention we cannot agree. A mere examination of the sample and hearing the tone produced thereby sufficiently characterize it as a bell within any common and ordinary meaning of the term. It is true that the tone produced is not necessarily a musical one; but it is also true that there are many bells that produce tones which may hardly be termed musical, such as cowbells, sheep bells, dinner bells,

fire bells, and the like. In order to be a bell it is not essential that the tone produced should be a musical sound. That may be true of church bells or carillons but it is not a necessary characteristic of bells in general.

From the entire record and from an examination of the sample in evidence we are satisfied that the collector has correctly classified the imported articles as bells within the meaning of said paragraph 364, and we so hold. All claims of the plaintiffs are therefore overruled and judgment will be rendered accordingly.